TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JEFFREY M. CHEMERINSKY (Cal. Bar. No. 270756)
JOSEPH D. AXELRAD (Cal. Bar No. 274580)
Violent and Organized Crime Section
Assistant United States Attorneys
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-7964
     Facsimile: (213) 894-0141
     E-mail:    joseph.axelrad@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-00256-JFW |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT KHAI MCGHEE |
| v. | |
| KHAI MCGHEE, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Jeffrey M. Chemerinsky and Joseph D. Axelrad, hereby files its sentencing position regarding defendant Khai MCGHEE ("defendant").

This sentencing position is based upon the attached memorandum of points and authorities, the presentence investigation report ("PSR"), the files and records in this case, and such further evidence and argument as the Court may permit.  The government

respectfully requests the opportunity to supplement its position or respond to defendant as may become necessary.

Dated: January 31, 2022

Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

　　　/s/
JEFFREY M. CHEMERINSKY
JOSEPH D. AXELRAD
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Three days after his eighteenth birthday, on the afternoon of March 4, 2021, defendant Khai McGhee ("defendant") and his co-conspirators trolled the streets of Beverly Hills searching for someone to rob.  At approximately 2:10 p.m., defendant and two co-conspirators approached an unsuspecting victim seated in the crowded outdoor dining area of the Il Pastaio restaurant in Beverly Hills, California.  Defendant and his coconspirators held a loaded gun at the victim's head while demanding his wristwatch.  A struggle for the gun ensued, during which approximately two rounds were discharged from the firearm, leaving a second restaurant patron shot in the leg.  Defendant and his robbery crew's total and blatant disregard for the safety of their victim, or anyone else for that matter, is deeply disturbing.

Defendant awaits sentencing after pleading guilty to the three-count indictment charging him with conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a), one count of interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a), and one count of possess, use, carry, brandish, and discharge a firearm in furtherance of and during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii).

The United States Probation Office ("USPO") issued the PSR in this case on January 10, 2022, calculating a Guidelines range of 57 to 71 months, based on a total offense level of 23 and a category III criminal history.  Defendant is also subject to an

additional 120-month sentence based on his plea to the § 924(c) count, which must run consecutive to any Guidelines sentence.

As set forth below, the government submits that, taking into account the factors identified in 18 U.S.C. § 3553(a), a total term of custody of 166 months' imprisonment is appropriate. The government further recommends that defendant be sentenced to a five-year term of supervised release, and a special assessment of $300. Such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, to adequately deter defendant from committing further offenses, and to avoid unwarranted sentencing disparity with other similarly situated defendants.

## II. STATEMENT OF FACTS

Defendant did not enter a plea agreement in advance of his guilty pleas to all counts of the Indictment. However, the parties did jointly stipulate to factual basis as part of the Joint Status Report, Proposed Factual Basis, Elements, and Penalties for Change of Plea Hearing. (Dkt. 80.) As described in the Joint Status Report, the facts are as follows:

> Beginning on a date unknown, and continuing to on or about March 4, 2021, in Los Angeles County, within the Central District of California, defendant conspired and agreed with co-conspirators to commit a robbery affecting interstate commerce. Defendant entered this agreement knowing of its purpose and intending to accomplish that purpose. In furtherance of the conspiracy, and to accomplish its objects,

2

|   |   |
|---|---|
| 1 | defendant and co-conspirators committed overt acts |
| 2 | within the Central District of California, including |
| 3 | but not limited to traveling in a co-conspirator's |
| 4 | black BMW to Beverly Hills, California, on March 4, |
| 5 | 2021 for the purpose of committing an armed robbery. |
| 6 | On March 4, 2021, defendant and two co-conspirators |
| 7 | approached |
| 8 | Victim 1, who was sitting within the outdoor |
| 9 | dining area of the Il Pastaio restaurant, located at |
| 10 | 400 N. Canon Drive, Beverly Hills, California. |
| 11 | Defendant and his co-conspirators, each aiding and |
| 12 | abetting the others, knowingly obtained property, |
| 13 | namely, a Richard Mille model RM 11-03 Rose Gold |
| 14 | Flyback chronograph wristwatch, from or in the |
| 15 | presence of Victim 1, by means of robbery, believing |
| 16 | that Victim 1 would part with the property because of |
| 17 | the robbery.  The robbery affected interstate |
| 18 | commerce. |
| 19 | The crime of interference with commerce by |
| 20 | robbery, in violation of Title 18, United States Code, |
| 21 | section 1951(a), as charged in Count Two of the |
| 22 | Indictment, is a crime of violence. During and in |
| 23 | relation to that crime, defendant and his co- |
| 24 | conspirators, each aiding and abetting the others, |
| 25 | knowingly used, carried, and brandished a firearm, |
| 26 | namely, a black Glock 19 Generation 5, 9mm caliber |
| 27 | pistol, bearing serial number BRZC854.  In the course |
| 28 |   |

of a struggle during the robbery, at least two rounds were discharged from the firearm.

## III. PRESENTENCE INVESTIGATION REPORT

### A. Guidelines Calculation

The USPO concluded that defendant has a total offense level of 23. PSR, ¶ 34. This results from a base offense level of 20 (U.S.S.G. § 2B3.1(a)), a four-level enhancement for serious bodily injury (U.S.S.G. § 2B3.1(b)(3)(B)), a two-level enhancement based on the value of the watch stolen (U.S.S.G. § 2B3.1(b)(7)(C)), and a three-level decrease for acceptance of responsibility (U.S.S.G. § 3E1.1(a), (b)). PSR, ¶¶ 20-35.

The PSR also identifies defendant as a Criminal History Category of III. PSR, ¶ 42. Based on the calculated criminal history category and total offense level, defendant's applicable Guidelines range is 177-191 months. PSR, ¶ 89. The USPO issued it Disclosed Recommendation Letter on January 7, 2022, and recommends a sentence of 177 months. (Dkt. 91.)

## IV. APPLICATION OF THE § 3553 FACTORS

The government submits that a sentence of 166 months' imprisonment, which is based on a two-level recommended variance, and the combination of the adjusted low end of the Guidelines' range followed by the 120-month consecutive sentence association with Count Three, as well as five years' supervised release, is "sufficient, but not greater than necessary," to comply with the purposes enumerated in 18 U.S.C. § 3553(a)(2).

### A. Legal Background

"All sentencing proceedings are to begin by determining the applicable Guidelines range," which serves as "the starting

4

point and the initial benchmark" for determining a reasonable sentence. United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008) (internal quotation marks and citation omitted). The parties should then be given an opportunity to argue for what they believe is an appropriate sentence. Id. Following argument by the parties, the Court must consider each of the sentencing factors listed in 18 U.S.C. § 3553(a), including the applicable Guidelines range, "to decide if [those factors] support the sentence suggested by the parties." Id.; see also Gall v. United States, 552 U.S. 38, 49 (2007). In the end, the Court must impose a sentence that is "sufficient, but not greater than necessary," to reflect the offense's seriousness, to promote respect for the law, and to provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. See 18 U.S.C. § 3553(a); Carty, 520 F.3d at 991.

**B. Response to Defendant' Objections to the PSR**

Defendant objects to the PSR's four-level enhancement for "serious bodily injury," which is premised on the gunshot wound suffered by Victim 2 as he/she sat in the outside dining area of Il Pastaio. (Def. Pos., at 4.) As discussed in the PSR, the enhancement is correctly applied given the nature of the injury – a gunshot wound – and the dangerous weapon used to inflict the injury – a firearm. In relevant part, Application Note 1(M) of USSG § 1B1.1 defined "serious bodily injury" as:

> "[I]njury involving extreme physical pain or the
> protracted impairment of a function of a bodily

5

      member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation."

Here, as depicted in the exhibits to defendant's sentencing position, Victim 2 required hospitalization to treat his/her gunshot wound. (Dkt. 93-1, pp. 2-5.)

Moreover, Application Note 1(E) defines "dangerous weapon" as "an instrument capable of inflicting death or serious bodily injury...". This definition of dangerous weapon indisputably includes firearms such as the Glock 19 handgun used here.

The "serious bodily injury" enhancement was correctly applied by the Probation Office.

**C.  Analysis**

Defendant's participation in this violent offense deserves a serious sanction and punishment. The use of a firearm to commit an armed robbery creates the potential for a multitude of violent and dangerous outcomes. Of course, very little would need to have changed for the outcome of defendant's armed robbery to have been even worse. Defendant and his coconspirators' decision to hold a *loaded* firearm to Victim 1's head is especially troubling. Put simply, this gun crime was committed in reckless disregard for the innocent victims in the area.

The disregard defendant and his coconspirator displayed for the safety of Victim 1, the numerous restaurant patrons and bystanders, and, eventually Victim 2, cannot be overstated. What is more, this type of robbery where firearms are brandished

and discharged leaves severe, lasting trauma that victims carry with them their entire lives.

The government recognizes that there are mitigating factors that exist in defendant's personal history and characteristics. Despite what appears to have been a stable family, defendant began running away from home at an early age. PSR, ¶¶ 52-83. Ultimately, defendant's parents kicked him out of their home when he was only 15 or 16 years old. From a young age, defendant has also suffered from Attention Deficit Hyperactivity Disorder. Defendant has also struggled with a variety of addictions. Ultimately, defendant's personal circumstances, his age, and his mental health warrant a variance from the guidelines and the government respectfully requests that Court apply a two-level variance, with an adjusted Guidelines range of 46-57 months.

The requested sentence serves the goals of both specific and general deterrence. As to specific deterrence, as mentioned above, the requested sentence, will be defendant's lengthiest term of imprisonment. This sentence also serves the purposes of general deterrence by making clear that gun crimes are punished severely.

Finally, the government believes that the requested sentence avoids unwarranted sentencing disparities with other defendants in similar circumstances as defendant. The Court is entitled to rely on a correctly calculated Guidelines' range in finding that there is no unwarranted disparity between defendant and other offenders convicted of similar offenses. United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010). Here,

Case 2:21-cr-00256-JFW   Document 95   Filed 01/31/22   Page 10 of 10   Page ID #:425

defendant's conduct appears to be nearly identical to co-defendant Malik Powell.  However, co-defendant's Powell's Guidelines range was determined to be 46-57 months based on a criminal history category I.  The government's requested variance also takes into account unwarranted sentencing disparities by placing both defendant and co-defendant Powell in the same Guidelines range for their nearly identical conduct.

All of these factors are accounted for in the government's recommendation, which balances the history and characteristics of the defendant with the nature of the crimes.  For these reasons, the government believes that a sentence of 166 months in custody is appropriate.

**V.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to: (1) 166 months' imprisonment; (2) a five-year period of supervised release; and (3) a mandatory special assessment of $300.

8